UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STEVEN JOSEPH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-01339 |
| | ) | Judge Trauger/Brown |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the following reasons, the Magistrate Judge **RECOMMENDS** that *Plaintiff's Motion for Judgment upon the Administrative Record* (Doc. 13) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

## I.        PROCEDURAL HISTORY

Plaintiff applied for disability benefits in June 2013, alleging an onset date of November 1, 2007. (AR, pp. 274-287).[1] He later amended his alleged onset date to May 12, 2013. (*Id.* at 318). His applications were denied on initial review and upon reconsideration. (*Id.* at 102-159, 163-168, 174-181). After an administrative hearing (*Id.* at 46-101), the ALJ issued an unfavorable notice of decision (*Id.* at 21-45). The Appeals Council declined to review the ALJ's decision. (*Id.* at 1-6). Plaintiff thereafter appealed the Commissioner's decision to this Court.

---

[1] Citations to the administrative record ("AR") (Doc. 11) are to the Bates stamp at the lower right corner of the page.

(Doc. 1). Presently pending is the fully briefed *Plaintiff's Motion for Judgment upon the Administrative Record*. (Docs. 13, 14, 17, 18). This matter has been referred to the undersigned for a Report and Recommendation ("R&R"). (Doc. 19).

## II.    REVIEW OF THE RECORD

### A.  Medical Records[2]

Plaintiff is legally blind in his left eye and has a history of left knee surgery and reduced range of movement in his neck and spine. Summary diagnosis of legal blindness in Plaintiff's left eye is noted in the record. (*See, e.g.*, AR, p. 497). Arthroscopic surgery was performed on Plaintiff's knee in October 2005. (*Id.* at 554). His neck limitation reportedly was caused by a car accident in 1995, and though it did not result in gross neurological deficits, x-rays revealed probable acute right cervical radiculopathy. (*Id.* at 555). Plaintiff presented to Marathon Chiropractic for reduced range of movement and pain in his spine in March 2015. (*Id.* at 639). He was expected to make a full recovery, and treatment notes from his regular appointments show improvement of his symptoms, decrease in pain, and improved activities of daily living. (*Id.* at 645-653).

Plaintiff additionally contends with ulcerative colitis.[3] A biopsy in September 1995 revealed severe active acute colitis. (*Id.* at 547). Treatment notes show his condition was overall much better in December 1995. (*Id.* at 548). The condition was again confirmed by a colonoscopy in 2002 and a biopsy in 2005 which showed evidence of mild chronic active colitis. (*Id.* at 549, 551). In 2002, Plaintiff reported he had not taken his medication for over a year and

---

[2] Absent a sentence six remand, the Court cannot consider new evidence that was admitted by the Appeals Council but not reviewed by the ALJ. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838-39 (6th Cir. 2016) (citations omitted).

[3] Ulcerative colitis is a type of inflammatory bowel disease. Elsevier Saunders, *Dorland's Illustrated Medical Dictionary* 384 (32nd ed. 2012).

his symptoms had not been too bad. (*Id.* at 551). In the records provided, Plaintiff consistently denied gastrointestinal or genitourinary complaints and did not report chronic flares to his medical providers. (*Id.* at 374, 448, 467-468, 476, 487-488, 495-496, 583-584, 590-591, 604-605, 611-612, 620-621, 629-630).

In addition, Plaintiff presented to Gateway Medical Center and the Montgomery Health Department from 2013 to 2014 for a garden variety of maladies, including an allergic reaction to an herbal supplement, bronchitis, ADD, depression, prediabetes, skin tags, rashes, erectile dysfunction, flu symptoms, numbness, and insomnia. (*Id.* at 374-425, 436-466, 523-537). Plaintiff displayed appropriate behavior during his visits to Gateway Medical Center (*Id.* at 374, 449) and displayed an inappropriate reaction during a visit at Montgomery County Health Department for which he later apologized (*Id.* at 406).

From 2007 to 2015, Plaintiff received treatment for a number of mental impairments, including Autism spectrum disorder, major depressive disorder, ADD/ADHD, and Asperger's disorder. (*Id.* at 467-511, 565-638). This care was primarily provided during office visits with Shabeer Abubucker, M.D., and counseling sessions with John DeMarco, LPC-MHSP, at Centerstone. Treatment notes show one visit in 2007, visits a couple of times a year from 2009 to 2014, and nearly monthly visits in 2014 and 2015. He missed several appointments between 2014 and 2015. (*Id.* at 475, 486, 587).

During his visits, Plaintiff reported depression, noise and visual sensitivity, trouble establishing and following through with priorities, irritability, ADD, forgetfulness, trouble focusing, and mood swings. (*Id.* at 467-511, 565-638). Plaintiff endorsed thoughts of suicide in February 2012 (*Id.* at 507), but he consistently denied suicidal or homicidal ideation in every subsequent visit. (*Id.* at 467, 476, 487, 495, 583, 590, 604, 611, 620, 629).

During each visit with Dr. Abubucker, Plaintiff was casually groomed, alert and oriented, and displayed mild impairment in recent and remote memory. (*Id.* at 468, 477, 488, 496, 584, 591, 605, 612, 621, 630). He displayed a normal mood and appropriate affect on all but two occasions during which he was irritated or angry. (*Id.*). He was focused during a majority of the visits. (*Id.* at 468, 477, 488, 496, 621, 630). In March 2015, Plaintiff reported he was trying to make a video of his life and his difficulties. (*Id.* at 604). Over the course of Plaintiff's treatment, Dr. Abubucker prescribed Concerta, Zyprexa, Cymbalta, Hydroxyzine, Wellbutrin, Neurontin, Risperdal, Depakote, Lamictal, Trazodone, Clonidine, Venlafaxine, Viagra, Abilify, Methylphenidate, Methylin, Valproic acid, and Ritalin. (*Id.* at 574-575). Dr. Abubucker settled on prescriptions for Concerta, Zyprexa, Cymbalta, and Hydroxyzine. (*Id.* at 574).

Notes from LPC DeMarco's counseling sessions generally noted slight improvement in Plaintiff's goals. (*Id.* at 471, 473, 483, 492, 577, 594, 602, 627, 637). These goals included handling angry feelings, identifying anger triggers and appropriate responses, resolving interpersonal conflicts, communicating and interacting with others, mood stabilization and tolerance to change, and coping with sound and light sensitivity. (*Id.* at 471, 473, 481, 483, 492, 501, 577, 594, 602, 624, 627, 633, 637). No progress was made in several sessions (*Id.* at 483, 501, 624, 633), and a decline was noted in one session (*Id.* at 481).

## B. Opinion Evidence

In a function report, Plaintiff described a typical day. He wakes up between 8 a.m. and noon, takes care of personal needs, takes his medication, fixes a simple meal, spends time online checking his email—sometimes he gets distracted for hours online—performs chores, goes shopping, makes dinner and watches Netflix in the evening, and goes to bed between 1 a.m. and 5 a.m. (*Id.* at 335). Plaintiff reported he has difficulty choosing and organizing his attire and he

frequently needs to use the restroom. (*Id.* at 335-336). He can wipe down countertops, clear the table, sweep the floor, and wash dishes. (*Id.* at 337). He goes outside several days a week and can drive while wearing sunglasses but not at night. (*Id.* at 337-338). He shops for groceries several times a week at smaller stores. (*Id.* at 338). He can count change and use a checkbook, but he does not pay bills or handle a savings account. (*Id.* at 339). He interacts with a friend once or twice a week, speaks with his mother on the phone, and occasionally receives emails from friends and family. (*Id.*). He attends a men's group through his church weekly and attends church three times a month. (*Id.* at 340). He generally takes notes on his laptop during church services. (*Id.*). He reported trouble lifting, squatting, standing, reaching, walking, kneeling, talking, hearing, climbing stairs, seeing, remembering, completing tasks, concentrating, understanding, following verbal instructions, using his hands, and getting along with others. (*Id.* at 341-342). He said he does not get along with authority figures and does not handle stress or changes in routine well. (*Id.* at 342-343). He made similar statements in a second function report. (*Id.* at 512-522).

Woodrow Wilson, M.D., performed a consultative evaluation on July 2, 2014. (*Id.* at 426). Plaintiff's visual acuity with glasses was 20/40 with the right eye and with both eyes. (*Id.*). Though Plaintiff could perceive light with his left eye, he could not see the eye chart or count fingers. (*Id.*).

E-Ling Cheah, Psy.D., performed a consultative psychological evaluation on July 16, 2014. (*Id.* at 429). Plaintiff reported he could not manage his own finances but could manage his medication, prepare elaborate meals, wash dishes, vacuum, sweep, do laundry, drive weekly, watch television, read about politics, socially interact with a friend, and attend church occasionally. (*Id.* at 433). Dr. Cheah found Plaintiff had an average range of intellectual functioning, showed moderate impairment in his ability to sustain concentration, and had no

evidence of short-term, long-term, or remote memory impairment. (*Id.*). Plaintiff was anxious and showed evidence of a moderate impairment in social relating and the ability to adapt to change. (*Id.*). He could follow spoken and written instructions, and he could handle finances. (*Id.*).

State agency medical consultant Charles Settle, M.D., opined Plaintiff did not suffer from severe impairments. (*Id.* at 107, 120). On reconsideration, state examiner James Millis, M.D., agreed with Dr. Settle. (*Id.* at 135-136, 149-150).

State examiner Jayne Dubois, Ph.D., found no evidence of repeated episodes of decompensation and found moderate restriction of activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (*Id.* at 108, 121). Dr. Dubois opined Plaintiff could maintain concentration, persistence, and pace for simple, low-level detailed, and higher level multi-step tasks with infrequent interruptions. (*Id.* at 111, 124). Plaintiff could perform at a consistent pace with customary breaks and due to mental health symptoms would infrequently be absent or be unable to complete a normal work day. (*Id.*). Plaintiff could interact superficially with people, but he would work better with objects, and feedback and criticism should be supportive. (*Id.* at 111, 124-125). He could additionally adapt to infrequent change. (*Id.* at 112, 125). On reconsideration, state examiner Andrew Phay, Ph.D., agreed with Dr. Dubois. (*Id.* at 136, 140-141, 150, 154-155).

Dr. Abubucker completed a mental residual functional capacity ("RFC") assessment on January 15, 2015. (*Id.* at 538-540). Dr. Abubucker opined Plaintiff was moderately limited in the ability to remember locations and work-like procedures, carry out very short and simple instructions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and

take appropriate precautions. (*Id.*). He further opined Plaintiff was markedly limited in his abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work with others without being distracted by them, make simple work-related decisions, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, set realistic goals or make plans independently of others, and understand, remember, and carry out detailed instructions. (*Id.*). Dr. Abubucker opined Plaintiff could not manage his funds. (*Id.* at 540).

Dr. Abubucker also submitted evaluations for Plaintiff based on listing 12.04, affective disorders, and listing 12.06, anxiety related disorders. (*Id.* at 542-546). He opined Plaintiff was mildly restricted in activities of daily living, markedly limited in social functioning, extremely limited in concentration, persistence, and pace, and experienced four or more episodes of decompensation of extended duration. (*Id.* at 544). With respect to affective disorders, Dr. Abubucker opined Plaintiff has repeated episodes of decompensation and an environmental change would trigger such an episode. (*Id.* at 545). He opined the anxiety related disorder resulted in complete inability to function independently outside of the home, but he noted this was not a chronic occurrence. (*Id.* at 546).

LPC DeMarco submitted a letter on Plaintiff's behalf on June 30, 2015. (*Id.* at 541). He opined Plaintiff would be unsuccessful in a work environment because he was late to

appointments, had trouble remembering appointments and to take his medications, was easily agitated, had a sleep disturbance, had trouble with interpersonal relationships, and had significant light and sound sensitivities. (*Id.*). Dr. Abubucker also signed the letter. (*Id.*).

Claire Davis, CFNP, from the Vanderbilt Department of Gastroenterology, submitted a letter on Plaintiff's behalf on October 8, 2015. (*Id.* at 654). CFNP Davis explained Plaintiff had suffered from "debilitating" ulcerative colitis for twenty years and was being treated with a drug called Asacol. (*Id.*).

## C. The Administrative Hearing

Plaintiff was terminated from his job at a radio station due to financial cutbacks. (*Id.* at 56). He asked his former boss, "Would you say that my social clumsiness-type things added to your decision for me being let go?" and "Could you say in good faith if SSDI came to you, could you say in good faith that some of my social clumsiness were part of your decision-making in letting me go?" (*Id.*). According to Plaintiff, his former boss agreed to say those things. (*Id.*). Plaintiff then took a job at Centerstone, where he worked as a peer counselor. (*Id.* at 65). He stated he was fired because he "escalated" on his supervisor. (*Id.* at 66). Plaintiff testified he declined under-the-table work because he did not want to jeopardize his chance of receiving benefits. (*Id.* at 52).

Plaintiff testified his mental conditions are due to a mental breakdown he had in 2007; this event was described as a panic attack while he drove to work one day. (*Id.* at 52-54). Whereas he had no trouble grocery shopping before 2007, he testified he is now overwhelmed by the noises, volume of people, and wide selection of products. (*Id.* at 59). He now shops at smaller stores, like Dollar General. (*Id.*). Plaintiff also testified to no driving issues before 2007. (*Id.* at 60). Since 2007, however, Plaintiff stated he cannot drive at night because headlights hurt his

brain. (*Id.*). His light sensitivity extends to any lights, including the white background of a computer screen. (*Id.* at 61). Plaintiff stated he was on a stable medication regimen and while Dr. Abubucker recently prescribed Zyprexa to stabilize Plaintiff's mood swings, Zyprexa made him sleep too much. (*Id.* at 83-84).

Plaintiff stated he recently moved into public housing and was living by himself. (*Id.* at 58). He attends church about twice a month and does not go more frequently because he is overwhelmed by sensory input. (*Id.* at 61-63). He suggested he leaves his house once a day to buy groceries at the nearby Dollar General. (*Id.* at 63). Plaintiff stated he spends a lot of time looking at websites and talking to people through online social networks—spending up to eight hours online every day. (*Id.* at 84-85).

Plaintiff testified he has suffered from colitis for thirty years and that he needs to use the restroom eight to twelve times a day when he has a flare. (*Id.* at 67-68). A urinary tract disorder causes additional bathroom visits. (*Id.* at 68). He also testified to extreme insomnia causing him to be awake for three days in a row. (*Id.* at 67-68).

Plaintiff stated he has left-hand limitations which have not been officially diagnosed. (*Id.* at 72-73). With his left hand, Plaintiff can open doors but not jars, pick up objects from a table, hold a writing utensil, and hold, raise, and lower a full mug. (*Id.* at 77-78). Plaintiff stated he cannot type with his left hand and must often revise his typing. (*Id.* at 77).

Plaintiff testified his vision prevents him from working with small objects, he can read 12-point font, he frequently trips over objects on the floor, he can fold a cardboard box, and he can see objects in front of him and to his right side. (*Id.* at 78-81).

Based on the RFC ultimately determined by the ALJ, the vocational expert testified Plaintiff would be precluded from performing past relevant work but would be able to perform a variety of other jobs. (*Id.* at 93, 96-98).

**D.    The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2017.

2. The claimant has not engaged in substantial gainful activity since May 12, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease; left eye blindness and photosensitivity; personality disorder with maladaptive personality traits; anxiety disorder; bi-polar disorder; somatic symptoms disorder; attention deficit hyperactivity disorder; and autism spectrum / Asperger's syndrome. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently lift twenty-five pounds and occasionally up to fifty pounds; stand and/or walk for about six hours in an eight hour workday; sit for about six hours in an eight-hour workday; with the non-dominant left hand, he can frequently grab and twist and occasionally grasp; he can frequently perform hand to finger repetitive action and frequently work with small objects; he can frequently read size 12 print and larger; he can occasionally read smaller than size 12 print; he can handle and work with rather large objects; occasionally avoid hazards in the workplace, such as boxes on the floor and doors ajar; should avoid concentrated  to hazards such as machinery and heights; he should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation; and he should only work around moderate noise. He can maintain concentration, persistence, and pace for two hours at one time over an eight hour workday; occasionally interact with coworkers and supervisors but he should not work with the general public; he can adapt to infrequent changes in the workplace; [sic].

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was . . . 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 26-40) (emphasis omitted).

## III.     LEGAL STANDARD

### A.  Standard of Review

When the Commissioner denies disability benefits, the district court's review is limited to determining whether the decision is supported by substantial evidence and whether the proper legal standards were applied in the decision-making process. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). An ALJ's failure to comply with procedural requirements may denote a lack of substantial evidence. *Id.* (quoting *Cole*, 661 F.3d at 937).

### B.  Administrative Proceedings

For purposes of the Social Security Act, disability is evaluated in five steps. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant is not disabled if he is engaged in substantial

gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant is not disabled if he does not have a severe medically determinable impairment, or combination of impairments, that meets duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant is presumed disabled if he suffers from a listed impairment or its equivalent for the proper duration. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the claimant is not disabled if based on his RFC he can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the claimant is not disabled if he can perform other work based on his RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden during the first four steps, and the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## IV.    CLAIMS OF ERROR

Plaintiff sets forth three claims of error: (1) the ALJ failed to properly consider and give appropriate weight to Dr. Abubucker's opinion evidence, instead giving great weight to a consultative examiner's opinion; (2) the ALJ inappropriately found Plaintiff's ulcerative colitis was a non-severe impairment and failed to consider limitations resulting from this condition; and (3) the ALJ improperly discounted Plaintiff's credibility. (Doc. 14, pp. 8-16).

## V.    ANALYSIS

### A.  Opinion Evidence

Plaintiff first argues the ALJ erred by giving little weight to opinion evidence submitted by Dr. Abubucker, Plaintiff's treating physician, while at the same time giving great weight to consultative examiner Dr. Cheah's opinion. (*Id.* at 8-12).

Because a treating provider tends to have a detailed and longitudinal picture of a patient's impairments, the ALJ must give controlling weight to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If not entitled to controlling weight, a treating physician's opinion is weighed by considering the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by medical evidence and an explanation from the source, whether the opinion is consistent with the record as a whole, the source's specialization, and any other relevant factors. *Id.* §§ 404.1527(c), 416.927(c). The ALJ must provide "good reasons" for the weight given to a treating physician's opinion, and these good reasons must be supported by evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). That being said, the ALJ is not required to provide a "factor-by-factor" narrative. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011).

### 1. Dr. Abubucker's Opinion Regarding Listed Impairments

First, in assessing whether Plaintiff suffered from a listed impairment, the ALJ gave little weight to Dr. Abubucker's opinion that Plaintiff satisfied the requirements for two listings. (AR, p. 30). Dr. Abubucker opined Plaintiff was markedly limited in social functioning, extremely limited in concentration, had four or more episodes of decompensation, and was unable to function independently outside his home. (*Id.* at 30, 544-546).

The ALJ explained little weight was owed to the opinion because it was:

> inconsistent with the rather benign treatment records, existing of monthly individual therapy and low-dose anti-depressant medications. Furthermore, Dr. Abubucker goes into detail to describe that the claimant has "periods" in which he had great limitation in mental functioning, and that these limitations are not on a

> regular and continuing basis. Finally, even though Dr. Abubucker opined the claimant would be unable to function independently outside of the home, the undersigned notes the claimant lives alone, cares for his household chores, grocery shops, and manages his medications with little or no assistance.

(*Id.* at 30). This explanation is sufficient.

The ALJ correctly found that Dr. Abubucker's opinion was inconsistent with substantial evidence in the record—the physician's own treatment notes. As discussed below, the treatment notes do not reflect the severity of impairment opined by Dr. Abubucker. With this justification for giving Dr. Abubucker's opinion less than controlling weight, the ALJ considered the appropriate factors and provided good reasons for the little weight given.

From the ALJ's summary of the Centerstone treatment notes and Dr. Abubucker's opinion evidence, it is apparent the ALJ was aware of the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and Dr. Abubucker's specialization as a mental health provider. (*Id.* at 30, 33-34, 36-37).

The ALJ was correct to note the severe limitations in Dr. Abubucker's opinion were not supported by the benign treatment notes. Records show Plaintiff missed several appointments (*Id.* at 475, 486, 587) and complained of depression, noise and visual sensitivity, trouble establishing and following through with priorities, irritability, ADD, forgetfulness, trouble focusing, and mood swings (*Id.* at 467-511, 565-638). With the exception of one incident in February 2012 (*Id.* at 507), Plaintiff consistently denied homicidal or suicidal ideation (*Id.* at 467, 476, 487, 495, 583, 590, 604, 611, 620, 629). During each visit, he was casually groomed, alert and oriented, and displayed mild impairment in recent and remote memory. (*Id.* at 468, 477, 488, 496, 584, 591, 605, 612, 621, 630). On only two occasions did he display an irritated or angry mood (*Id.* at 584, 605); during all other visits he displayed a normal mood and appropriate affect (*Id.* at 468, 477, 488, 496, 591, 612, 621, 630). Records show he was focused during a

majority of the visits. (*Id.* at 468, 477, 488, 496, 621, 630). Contrary to Dr. Abubucker's finding of numerous episodes of decompensation, the record only reflected at most one episode in February 2012 (*Id.* at 507). Aside from various prescriptions (*Id.* at 574-575), Dr. Abubucker did not order further intervention.

The ALJ additionally provided clear and supported reasons for discounting Dr. Abubucker's opinion that Plaintiff's anxiety disorder prevented him from functioning outside the home. The ALJ was correct to note Dr. Abubucker's comment that Plaintiff's anxiety-related symptoms were periodic and did not chronically prevent him from functioning outside his home. (*Id.* at 30, 546). Dr. Abubucker's own comment undermines his opinion.

Further, the ALJ correctly identified inconsistencies between Plaintiff's activities of daily living and Dr. Abubucker's opinion that Plaintiff could not function independently outside of the home. As the ALJ found, Plaintiff lived alone, performed household chores, went grocery shopping at Dollar General, could drive a car to run errands, and managed medications with little or no assistance. (*Id.* at 29-30).

The ALJ explained the reasons for giving Dr. Abubucker's listing opinion little weight, and the reasons given are supported by substantial evidence.

### 2. Dr. Abubucker's Opinion Regarding Plaintiff's RFC

The ALJ also gave little weight to Dr. Abubucker's opinion regarding Plaintiff's work-related limitations. (*Id.* at 36-37). Dr. Abubucker had opined that Plaintiff would be moderately limited in his ability to remember locations and work-like procedures, carry out short and simple instructions, and maintain socially appropriate behavior; markedly limited in sustained concentration and persistence, interaction with others, response to workplace changes, setting

realistic goals, and remembering, understanding, and carrying out detailed instructions; and would not be able to manage his funds or pay his bills. (*Id.* at 36, 538-540).

The ALJ provided a lengthy explanation for giving this opinion little weight:

> The extreme limitations opined by Dr. Abubucker are simply not supported by the medical evidence of record, or by the claimant's testimony regarding his daily activities. Though Dr. Abubucker opined the claimant would be markedly limited in all tasks requiring concentration, the undersigned notes that the claimant spends many hours each day performing tasks on the internet, including maintaining a blog. There is also notation [sic] that the claimant was working to produce a video about his symptoms. It is reasonable that these tasks would take at least a moderate degree o[f] concentration. Furthermore, the claimant can operate a motor vehicle and attends church, where he takes notes of the sermons on his computer. (Exhibit 7F). These tasks are inconsistent with someone who would be markedly limited in the performance of tasks requiring concentration. The undersigned also notes that Dr. Abubucker's opinion that the claimant would be markedly limited in interacting with others is also unsupported by the claimant's own statements. The claimant testified that he is able to shop in stores and attends church at least twice a month. He also reported attending a men's group through his church. (Exhibit 7F). Until recently, the claimant lived in a house with several roommates. Again, these tasks seem to be inconsistent with someone who is markedly limited in his ability to interact with others. As noted above, the claimant has received regular monthly therapy and medication appointment [sic]; however, there have been no instances of inpatient treatment, partial hospitalization, or crisis intervention. These extreme limitations are simply not supported by the evidence of record.

(*Id.* at 36-37).

As with Dr. Abubucker's listings opinion, the ALJ provided an adequate and well-supported explanation for giving Dr. Abubucker's work-related opinion little weight. The ALJ once again recognized that the extreme limitations opined by Dr. Abubucker were inconsistent with Plaintiff's activities of daily living and were not supported by the rather mild treatment record. Finding good cause to give Dr. Abubucker's opinion less than controlling weight, it is evident from the ALJ's decision that the ALJ considered the appropriate factors when weighing the opinion and stating the good reasons for the weight given.

The ALJ summarized Plaintiff's Centerstone records, indicating the ALJ was aware of the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. (*Id.* at 33-34). Dr. Abubucker provided no supporting explanation for his opinion, thus gravitating against supportability. As stated in the block quote above, the ALJ found Dr. Abubucker's opinion was inconsistent with the record as a whole. (*Id.* at 36-37). Last, the ALJ acknowledged that Dr. Abubucker was Plaintiff's treating mental health provider, thus showing knowledge of the source's specialization. (*Id.* at 30, 36). The ALJ provided good reasons for giving Dr. Abubucker's opinion evidence little weight, and those good reasons are supported by substantial evidence.

### 3. Dr. Cheah's Opinion Evidence

Plaintiff complains the ALJ gave too much weight to consultative examiner Dr. Cheah's opinion evidence, noting that Dr. Cheah did not articulate work-related limitations. (Doc. 14, pp. 10-11).

Unless controlling weight is given to a treating source's opinion, the ALJ must consider all medical opinions when evaluating the severity of impairments, the claimants RFC, and application of vocational factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ may not subject a consultative examiner's opinion to less scrutiny than is applied to an opinion submitted by a treating physician. *Gayheart*, 710 F.3d at 379-80. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Ultimately, the ALJ is responsible for determining the claimant's RFC from the totality of the evidence submitted. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

After examining Plaintiff, Dr. Cheah opined Plaintiff showed no evidence of short-term or remote memory impairment and moderate impairment in concentration, social relating, and adapting to change. (AR, pp. 35, 433). The ALJ gave this opinion great weight because:

> it is consistent with the claimant's history of medical treatment. Although this opinion does not reflect specific work-related limitations, it has generally been given great weight as it is well-supported by the mental status examination findings, which were generally within normal limits except for some depressed mood and difficulty with sustaining concentration, and is consistent with the course of treatment, which includes medication management by Centerstone and no inpatient, emergency, or partially hospitalized care and no suicidal ideation, homicidal ideation, or psychosis.

(*Id.* at 35). The ALJ provided a clear reason for giving Dr. Cheah's opinion evidence great weight—Dr. Cheah's opinion was consistent with Plaintiff's documented medical history. As summarized earlier, Plaintiff's record evidences mild and moderate areas of limitation. The limitations found by Dr. Cheah are consistent with this level of severity. The fact that Dr. Cheah did not include work-related limitation in the opinion is of no significance, as it is the ALJ's obligation to determine a claimant's RFC based on the evidence submitted. The ALJ's reliance on Dr. Cheah's opinion was appropriate, and the ALJ's rationale for doing so is supported by substantial evidence.

## B. Severe Impairments

Plaintiff next argues the ALJ erred by deeming his ulcerative colitis non-severe. (Doc. 14, pp. 12-14). Plaintiff complains, "The ALJ refused to consider the condition to be 'severe' due to a claimed lack of objective medical findings." (*Id.* at 13). Had Plaintiff's alleged symptoms been adopted—needing to take eight to twelve bathroom breaks in a full day—Plaintiff contends work would be precluded. (*Id.*).

At step two of the disability evaluation, the ALJ found Plaintiff suffered from numerous severe impairments. (AR, p. 26). Whether Plaintiff has additional severe impairments is "legally

irrelevant" because the finding of at least one severe impairment permitted the ALJ to consider both severe and non-severe impairments when determining Plaintiff's RFC. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 634 (6th Cir. 2016)).

Plaintiff's next assertion—that the ALJ found this condition was not supported by objective medical findings—is contradicted by the text of the ALJ's written decision. The ALJ acknowledged a biopsy performed in 1995 showed mild chronic active colitis. (AR, p. 27).

Rather than finding the condition itself was unsupported by objective medical evidence, the ALJ explained CFNP Davis' statements regarding the impairment and Plaintiff's reported functional limitations were not supported by objective findings. (*Id.*). According to CFNP Davis, Plaintiff experienced chronic flares of ulcerative colitis and was regularly taking Asacol and other medication to prevent flares. (*Id.* at 654). Plaintiff testified he must use the restroom up to eight to twelve times a day when experiencing a flare. (*Id.* at 67-68). The ALJ correctly found that the records submitted by Plaintiff did not support these assertions. Treatment records from the relevant time period show Plaintiff consistently denied gastrointestinal or genitourinary complaints and did not report chronic flares to medical providers. (*Id.* at 374, 448, 467-468, 476, 487-488, 495-496, 583-584, 590-591, 604-605, 611-612, 620-621, 629-630). Nor did the records reveal prescriptions for Asacol during the relevant period of time.

The ALJ's assessment of Plaintiff's ulcerative colitis is well-reasoned and supported by substantial evidence. This claim of error has no merit.

## C. Credibility

Last, Plaintiff challenges the ALJ's finding that the alleged functional restrictions were "not entirely credible." (Doc. 14, pp. 14-16). Plaintiff maintains the ALJ improperly took Plaintiff's testimony out of context. (*Id.*).

In evaluating disability, the ALJ considers the limiting effects imposed by symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a). So long as objective evidence from an acceptable source shows the claimant suffers from a medical impairment that could reasonably produce the symptoms alleged, the ALJ may then evaluate the intensity and persistence of those symptoms. *Id.* The ALJ is not obliged to accept the claimant's allegations as true. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). The ALJ will evaluate the claimant's statements with an eye to identifying inconsistencies with the remaining evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The ALJ's credibility evaluation must be supported by specific reasons that are grounded in evidence. SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). So long as the ALJ's credibility decision is supported by substantial evidence, it must be given great weight. *Cruse*, 502 F.3d at 542 (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

The ALJ found evidence of cervical degenerative disc disease, left eye blindness, photo sensitivity, personality disorders, anxiety, bi-polar disorder, somatic symptoms disorder, ADD, and Asperger's syndrome. (AR p. 38). However, Plaintiff's alleged functional restrictions were not entirely credible because they were disproportionate to the clinical findings and Plaintiff's medical history. (*Id.* at 32, 37-38). The ALJ stated:

> In light of the entire recorded evidence, including the claimant's testimony, the undersigned finds that the claimant made similar statement [sic] to his medical providers regarding his symptoms. However, his activities of daily living fail to support his disabling allegations. The undersigned specifically notes the

claimant's ability to spend more than eight hours a day in social interaction over the internet. The claimant lives alone and cares for his own personal needs, as well as the general maintenance of his home, without assistance. The claimant is able to shop in stores, attend church, maintain a few close friendships, attend a men's group, maintain a blog, and drive his car.

(*Id.* at 37-38). These reasons are specific and are supported by substantial evidence.

Contrary to Plaintiff's claim of error, the ALJ's written decision provides the proper context for these findings. Plaintiff testified he spent eight hours or more on the computer each day, bouncing from link to link, sometimes spending the whole day on the internet. (*Id.* at 29, 32). His online engagements encompassed social media, reading political and entertainment articles, and maintaining a blog. (*Id.* at 29, 36). In October 2014, Plaintiff denied having another period of obsessive blogging. (*Id.* at 34). He testified he lived alone and took care of his household needs. (*Id.* at 29, 32). He could clean his home and do his own laundry. (*Id.* at 29). He could prepare both simple and elaborate meals. (*Id.* at 29, 32). He performed his grocery shopping at the Dollar General across the street from his house. (*Id.* at 29). He attended church twice a month and took notes of the sermons on his computer. (*Id.* at 29, 36). He interacted with friends once or twice a week and talked to friends and family on the phone. (*Id.* at 29, 32). He attended a men's group once a week. (*Id.* at 32). He could also drive a car to run errands. (*Id.* at 29, 32). The ALJ did not take these abilities out of context.

The ALJ's credibility evaluation is sufficiently specific and is supported by substantial evidence. It is therefore entitled to deference. This claim of error is without merit.

## VI.    RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that *Plaintiff's Motion for Judgment upon the Administrative Record* (Doc. 13) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen days, after being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen days after being served with a copy thereof. Failure to file specific objections within fourteen days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 13th day of June, 2017.

/s/ Joe B. Brown
JOE B. BROWN
UNITED STATES MAGISTRATE JUDGE